UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:

RHITA E. BURKE,

       Debtor.

) CASE NO. 07-62311
)
) CHAPTER 13
)
) JUDGE RUSS KENDIG
)
) **MEMORANDUM OF OPINION ON**
) **MOTION FOR TURNOVER (NOT**
) **INTENDED FOR PUBLICATION)**

This matter is before the Court on the Motion of Rhita E. Burke ("Debtor") for turnover of property held by Toby L. Rosen, the chapter 13 trustee ("Trustee"), filed December 10, 2008. Trustee filed an objection on December 23, 2008. The Court held a hearing on the motion on January 21, 2009, at which the Court took the matter under advisement and established a schedule for the submission of supplemental briefs.

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). The following constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor filed for protection under chapter 13 of the Bankruptcy Code on August 8, 2007. She filed her first proposed chapter 13 plan on the same date. She also filed, on the same date, a motion for Trustee to make adequate protection payments of $200.00 per month apiece to two of her secured creditors, Wells Fargo Auto Finance ("Wells Fargo") and Huntington National Bank ("Huntington"). The Court entered an order on September 4, 2007, granting this motion. The motion and order were silent with respect to adequate protection payments to be made to a third creditor secured by a third vehicle of Debtor's, Capital One Auto Finance ("Capital One"). Debtor's initial plan was also silent as to the planned disposition of Capital One's collateral, a 1998 Econoline van; it was neither listed in the Special Provisions section as property to be surrendered, nor as secured property for which the secured creditor would be paid in full, nor as secured property to be crammed down.

Three objections to confirmation of Debtor's initial plan were filed, including one by Trustee and one each by CitiFinancial, Inc. and Wells Fargo Financial Acceptance Ohio, Inc. Debtor filed an amended plan on October 23, 2007; this was later refiled on November 3, 2007 solely to correct docket text. This plan revealed Debtor's intent to keep Capital One's collateral and cram down the loan thereon. Trustee objected again. Debtor proposed yet another amended plan on December 14, 2007. On December 17, 2007, Trustee objected again; on January 4, 2008, so did Onyx Acceptance Corp., which had thus far not filed objections to the previous plans.

The Court held a confirmation hearing on January 23, 2008. Based on the information presented at that hearing, the Court did not rule on either objection to confirmation at that time. The Court held a telephonic status conference on both objections on May 14, 2008, at which time the Court established briefing deadlines for Debtor and Trustee on Trustee's objection to confirmation; Onyx did not request the opportunity to brief its objection, and the Court entered an agreed order settling that objection on July 28, 2008. Trustee was given until June 30, 2008 to submit a brief in support of her position, and did so on June 30, 2008. Debtor was given until July 14, 2008 to file a response; no response was filed. On July 21, 2008, the Court entered a memo granting Trustee's objection to confirmation and giving Debtor thirty days to file an amended chapter 13 plan or be subject to dismissal.

On July 21, 2008, Debtor filed a motion to reconsider and motion for leave to file her brief after the opinion was entered, amending this motion on July 23, 2008 to comply with the electronic service requirements of this Court. Trustee objected to Debtor's motion on July 25, 2008, and Debtor filed a response on July 29, 2008, amending that response on July 31, 2008. The Court held a hearing on Debtor's motion on August 20, 2008, and on October 21, 2008, issued an opinion and order denying Debtor's motion to reconsider and motion for leave to file. Debtor still did not propose an amended chapter 13 plan, nor did she submit anything else to the Court. On November 25, 2008, the Court entered an order dismissing the case, pursuant to the order of July 21, 2008. The case has not been reinstated, though it has also not been closed.

On December 10, 2008, Debtor filed a motion for turnover of funds in Trustee's possession. Minor discrepancies exist between the figures stated by various parties in their briefs, as well as those stated in other documents filed in this case, regarding the amount of money Trustee received. Trustee's final report and account, filed January 29, 2009, states that Trustee received a total of $8,152.66. Debtor's counsel cites a figure of $7,901.12. Trustee does not state in her brief how much she claims to have received; however, her final report and account predates the briefs on the instant motion, so the Court presumes that that figure still represents her position. These discrepancies do not substantially affect the Court's legal analysis. The parties agree, however, on the figure in Trustee's final report and account with respect to how much was distributed to the three creditors holding security interests in Debtor's vehicles before the case was dismissed: $7,217.80. Debtor's position is that this was too much; Trustee's position is that this was actually too little.

While confirmation was pending, Trustee made monthly disbursements to creditors secured by Debtor's personal property, including $1,300.00 to Huntington in 13 payments of $100.00, $1,638.00 to Capital One in 14 payments of $117.00, and $3,224.00 to Wells Fargo in 13 payments of $248.00. (Trustee had released funds in the amounts provided for in the form plan notwithstanding the separate adequate protection order of September 4, 2007; she admitted in her final brief in this matter that this was in error.) Each of these secured creditors held an interest in one of Debtor's motor vehicles: a 1999 Dodge Neon, a 1998 Ford Econoline van, and a 2001 Toyota Corolla, respectively. Debtor's argument is that Trustee only had the legal authority to release $5,600.00 to these secured creditors: $200.00 per month each to Huntington and Wells Fargo, and nothing to Capital One, over the course of fourteen months. The case was in its fifteenth month of administration when it was dismissed. Trustee's argument is that she actually had the legal authority (indeed, the obligation) to distribute $7,755.00 to the three aforementioned secured creditors over the course of the period between filing and dismissal: $200.00 per month each to Huntington and Wells Fargo for *fifteen* months, for a subtotal of $6,000.00, and $1,755.00 (fifteen payments of $117.00) to Capital One under the terms of the "form plan."

Trustee filed her objection on December 23, 2008. Trustee notes that one provision of the "form plan" established as the standard for practice in this location by this Court's Admin. Order 05-05 states that "[t]he fixed payments required by the plan will begin on or about the first day of the first month after the first payment is received." (Doc. #48; see also Admin. Order 05-05, Ex. A at 2.) Trustee argues that the act of filing the plan and the language of the administrative order give Trustee the authority to begin making fixed payments to creditors before confirmation. Debtor argues that Admin. Order 05-05 exceeds the Court's authority, arguing that the administrative order mandates deviation from the statutory requirements for making payments under the Bankruptcy Code. Less briefed, but no less before the Court, is a subsequent issue: whether the adequate protection order, which was silent on the issue of the treatment of Capital One, superceded the terms of the form plan with respect to Capital One and effectively mandated that Capital One not received preconfirmation adequate protection payments.

The Court held a hearing on Debtor's motion on January 21, 2009, and established deadlines for the parties to brief their positions. Debtor filed her brief on February 11, 2009. Trustee filed hers on March 4, 2009.

## LEGAL ANALYSIS

### I. Administrative Order 05-05

#### A. "Fixed Payments" as Adequate Protection Payments

Debtor does not dispute that the language of the form plan authorizes the trustee to disburse the fixed payments required by the plan to creditors even before confirmation, as the

3

text clearly authorizes payments to begin "on or about the first day of the first month after the first payment is received," and that a debtor must begin making payments "within ten (10) days of filing the plan." Admin. Order 05-05, Ex. A at 2. Debtor instead argues that, to the extent that Admin. Order 05-05 requires debtors to adopt this plan provision, that administrative order is unlawful, and that trustee therefore cannot rely on it to justify her distributions to creditors.

The Bankruptcy Code addresses payments to creditors pursuant to a chapter 13 plan in 11 U.S.C. § 1326(a). That subsection reads, in relevant part:

> (1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount—
>
>> (A) proposed by the plan to the trustee;
>>
>> (B) scheduled in a lease of personal property directly to the lessor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment; and
>>
>> (C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.
>
> (2) A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503 (b).
>
> (3) Subject to section 363, the court may, upon notice and a hearing, modify, increase, or reduce the payments required under this subsection pending confirmation of a plan.

11 U.S.C. § 1326(a)(1)-(3). Debtor's argument turns on the language of § 1326(a)(2), providing that "payment[s] made under paragraph (1)(A) shall be retained by the trustee until confirmation

4

or denial of confirmation." No plan was ever confirmed in this case. Upon dismissal of a chapter 13 case in which no plan is confirmed, undistributed funds paid into the plan by debtors, minus adequate protection payments and administrative claims, must be returned to debtors. In re Sexton, 397 B.R. 375, 377 (Bankr. M.D. Tenn. 2008); In re Inyamah, 378 B.R. 183, 185 (Bankr. S.D. Ohio 2007).

Debtor argues that the payments Trustee made to secured creditors were *not* adequate protection payments (Mot. for Turnover ¶ 12); Trustee argues that they were (Trustee's Br. 1).

The form plan does not explicitly describe "the fixed payments required by the plan" as adequate protection payments. The form plan does not specifically address adequate protection payments anywhere. These particular fixed payments, however, were clearly adequate protection payments.

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

11 U.S.C. § 361(1). Debtor continued to use the property of the estate–the three vehicles–for more than a year between the time the case was filed and the time this case was dismissed. That continued use resulted in a decrease in the value of the interests of the secured creditors in that property. The Court has the power to condition a debtor's continued use of property of the estate in which an entity has an interest on the granting of adequate protection of that interest. See 11 U.S.C. § 363(e). The stay under section 362 that prevented those creditors from immediately executing upon the subject vehicles likewise resulted in a decrease in the creditors' interests in their collateral. A lack of adequate protection can result in the termination, annulment, modification, or conditioning of the automatic stay. 11 U.S.C. § 362(d). The payments Trustee made on each of the subject vehicles clearly resulted in the continued enjoyment of those vehicles by Debtor for more than a year, even though no plan was ever confirmed. Whether Trustee calls these payments "fixed payments" or "adequate protection payments" or anything else, they are adequate protection payments because they take the form of a manner of adequate protection allowable under § 361, serve the purpose of adequate protection under § 361, and cannot be otherwise explained as serving some purpose other than adequate protection.

Moreover, while Trustee did not in fact heed the adequate protection order entered on September 4, 2007, that order forms the basis of Debtor's motion for turnover–Debtor alleges that Trustee made more adequate protection payments than authorized, while at the same time alleging that none of the payments Trustee made were adequate protection payments.

5

Since the payments in question were adequate protection payments, under Inyamah and Sexton, Debtor is not entitled to their return regardless of whether Admin. Order 05-05 purports to give the chapter 13 trustee premature permission to distribute payments. Had Trustee retained those payments, it would be the shortchanged creditors, not the debtor, who would have the legal right to pursue the recovery of those funds.

### B. Establishing Default Requirements of Preconfirmation Adequate Protection Payments Via Administrative Orders and Form Plans

The Court turns now to Debtor's argument that Admin. Order 05-05 exceeds the bankruptcy court's power to enter administrative orders. Debtor implicitly argues that Admin. Order 05-05 is a form of local rule, because he cites Industrial Fin. Corp. v. Falk (In re Falk), 96 B.R. 901 (Bankr. D. Minn. 1989) (en banc), for the proposition that a local rule of bankruptcy procedure "may only be upheld if (a) it is consistent with the Bankruptcy Code in that it does not 'abridge, enlarge, or modify any substantive right,' as required by 28 U.S.C. § 2075 and (b) it is 'a matter of procedure not inconsistent with' the Bankruptcy Rules as required by Bankruptcy Rule 9029." Falk at 904. Debtor then argues that, in providing for adequate protection payments to be made through the trustee and to begin immediately, the form plan under Admin. Order 05-05 is inconsistent with the Bankruptcy Code–specifically, the requirement of § 1326(a)(2) that payments made under § 1326(a)(1)(A) be retained by the trustee until confirmation or denial of confirmation.

Debtor's argument founders, however, on the fact that the payments made to creditors secured by personal property in this case are not payments under § 1326(a)(1)(A). They are adequate protection payments, as established in Part I.A, supra. Adequate protection payments are governed not by § 1326(a)(1)(A), but by §§ 1326(a)(1)(C) and (a)(3).

Since the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 ("BAPCPA"), the statutory default rule has been that in a chapter 13 case, debtors make adequate protection payments prior to confirmation directly to creditors secured by a debtor's personal property. 11 U.S.C. § 1326(a)(1)(C). Subparagraph (C), however, is modified by the language in paragraph (1) ("Unless the court orders otherwise"). 11 U.S.C § 1326(a)(1). In addition, bankruptcy courts have the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Furthermore, courts have the ability to "modify, increase, or reduce the payments required under [§1326(a)] pending confirmation of a plan." 11 U.S.C. § 1326(a)(3).[1]

---

[1] The Code requires that such modifications, increases, and reductions be "upon notice and a hearing." 11 U.S.C. § 1326(a)(3). However, as defined in the bankruptcy code, the phrase "after notice and a hearing" requires only "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. § 102(1)(A). In addition, a requirement of notice and a hearing authorizes an act without an actual hearing if such notice [as required under (A)] is given properly and if either no

In this division of this district, the Court's administrative order serves to order otherwise on the provision within (a)(1)(C) that the debtor make payments "directly to a creditor," requiring instead that these payments be made–as a default matter[2]–by wage withholding order to the trustee, and thence to those secured creditors entitled to adequate protection. As such, the form plan, which provides that the trustee shall commence making the fixed payments required by the plan preconfirmation, is not inconsistent with § 1326(a)(2) and does not enlarge any substantive right. Debtor's argument that Admin. Order 05-05 exceeded the scope of the Court's authority is therefore without merit.

## II. Treatment of Capital One's Claim

The Court turns now to the treatment of Capital One's claim under the terms of the adequate protection order of September 4, 2007, which Trustee admits she did not follow. The order merely grants the motion, so the Court turns there for the operative terms. The motion is silent with respect to Capital One. In addition, its operative provisions appear to speak at cross-purposes. Paragraph 15 of that motion reads: "Wherein, the Debtor requests that the Trustee be permitted to make *all* adequate protection payments on her behalf." (Mot. for Trustee to Make Adequate Protection Payments ¶ 15.) (Emphasis added.) The term "all" certainly implies that Trustee should make adequate protection payments to Capital One and, with no guidance to the contrary, should do so in the amount provided by the local practice, i.e., the form plan and administrative order.

Paragraph 16 of Debtor's motion, however, requests that "*all* adequate protection payments to be made to the secured creditors be sent to [Wells Fargo in the amount of $200.00 and Huntington in the amount of $200.00]." (Mot. for Adequate Protection ¶ 16.)

Under normal circumstances, the Court could read Capital One's exclusion from the list in paragraph 16 as excluding it from the list of creditors to receive adequate protection payments, notwithstanding the language of paragraph 15 requiring Trustee to make all adequate protection payments. However, this case presents an atypical factual situation, because at the time Debtor

---

hearing is timely requested by a party in interest or there is insufficient time for a hearing. 11 U.S.C. § 102(1)(B). "When attorneys practice in the bankruptcy court they are charged with a knowledge of the Federal Rules of Bankruptcy Procedure and the local rules of court which govern any particular proceeding." Auto Specialties Mfg. Co. v. Sachs (In re Auto Specialties Mfg. Co.), 133 B.R. 384, 392 (Bankr. W.D. Mich. 1991). Parties are therefore presumed to have notice that, under 11 U.S.C. § 1326(a)(3), adequate protection payments are "increased" (from zero), as well as the fact that the Court has "order[ed] otherwise" with respect to the direct payment provision within 11 U.S.C. § 1326(a)(1)(C). Parties also have an opportunity for a hearing should they desire to deviate from the form plan.

[2] Admin. Order 05-05 allows for the use of a plan other than the form plan if even the use of the "Special Provisions" section to deviate from specific terms of the remainder of the form plan is inadequate. Admin. Order 05-05 ¶ 3. This is irrelevant in this case, however, as not only did Debtor not move to use some plan other than the established form plan back in August of 2007, but doing so would have been unnecessary, as deviating from the preconfirmation payments provision would could be proposed within the Special Provisions section.

7

moved for adequate protection payments, Debtor had not yet declared her intent to keep the van in which Capital One held a security interest. The plan and motion were both silent on the issue of Capital One's collateral. In addition, Debtor's motion for adequate protection payments was not served on Capital One; it was served only on Trustee, Huntington, Wells Fargo, and Debtor. If Debtor's intent was to deviate from the form plan and deny Capital One adequate protection payments, she would have been required to serve Capital One as an interested party. Moreover, Debtor could have ended all uncertainty by simply saying what was to happen with regard to Capital One, rather than leaving it as a matter of conjecture.

Under these facts, the Court finds that Capital One's claim was not taken outside the provisions of the form plan by Debtor's motion for adequate protection payments. As such, the Court finds that Trustee had legal authority to distribute adequate protection payments to Capital One under the terms of the form plan once Debtor revealed her intent to retain that collateral. Trustee's position–that she actually distributed less in adequate protection payments to the three creditors secured by Debtor's vehicles–is meritorious. Trustee was obligated to distribute a total of $3,000.00 to Wells Fargo, $3,000.00 to Huntington, and $1,755.00 to Capital One, for a total of $7,755.00; Trustee distributed a grand total of only $7,217.80. Trustee's mistake does not inure to Debtor's benefit, however; at most, it may mean that the affected creditors have rights against Trustee and against one another, to the extent that any received less from Trustee than they would have had she dutifully followed the order of September 7, 2007 and the plan provisions as they stood revised with respect to Capital One on November 3, 2007 (the first time that a plan was properly docketed dealing with the treatment of Capital One's claim and collateral).

An order consistent with this opinion will be entered contemporaneously.

/S/ RUSS KENDIG

RUSS KENDIG
U.S. BANKRUPTCY JUDGE

8

**Service List:**

David B. Stearns
Joseph M. Romano
Romano Law Firm
50 Public Square
400 Terminal Tower
Cleveland, OH 44113

Rhita E. Burke
PO Box 7
Savannah, OH 44874

Toby L Rosen
400 W Tuscarawas St
Charter One Bank Bldg
4th Floor
Canton, OH 44702